HONORABLE RONALD B. LEIGHTON

FILED ___ LODGED
___ RECEIVED

MAY 26 2017

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                                    DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STEIN DISTRIBUTING INC,

    Plaintiff,

v.

PABST BREWING COMPANY, LLC,

    Defendant.

CASE NO. C17-5150-RBL

ORDER ON MOTIONS

DKT. ##11, 14

THIS MATTER is before the Court on Defendant Pabst Brewing Company's Motion for Dismissal [Dkt. #11] and Plaintiff Stein Distributing's Motion for Partial Summary Judgment [Dkt. #14].[1] This case concerns whether, when a beer supplier terminates its distributor's contract without cause, Washington's Wholesale Distributors and Suppliers of Spirits or Malt Beverages Act, chapter 19.126 RCW, provides the distributor with a single remedy: "compensation from the successor distributor for the laid-in cost of inventory and for the fair market value of the terminated distribution rights." RCW 19.126.040(4). Pabst notified Stein of its plan to terminate their agreement on February 16, 2017. On February 24, Pabst terminated

---

[1] This Order is nearly identical to that in *Marine View Beverage, Inc. v. Pabst Brewing Company, LLC.*, No. 17-5151-RBL and in *The Odom Corporation v. Pabst Brewing Company, LLC*, No. 17-5279-RBL.

Stein's distributor contract, and the next day, arranged for Columbia Distributing to service Stein's former territory. Columbia purchased Stein's existing inventory, but Columbia and Stein have yet to agree on the fair market value of Stein's lost distribution rights.

Stein sued Pabst for its lost profits, business interruption, lost investment, reliance damages, and other losses, alleging Pabst breached their contract by terminating it without cause and by failing to provide sixty days written notice of its intent to terminate. Pabst asks the Court to dismiss Stein's complaint because under the Act, Stein's only viable, remaining claim is against Columbia Distributing for the fair market value of Stein's terminated distribution rights. Alternatively, Pabst asks the Court to stay or abate the case until Stein and Columbia have arbitrated the fair market value of those rights.

Stein disagrees that its sole recourse for Pabst's termination of their agreement is against third-party Columbia Distributing. It argues the Act does not authorize terminations without cause and includes no statement of exclusivity. It contends RCW 19.126.040(4) provides a cumulative remedy for distributors whose contracts have been terminated wrongfully: statutory compensation from the successor distributor (in addition to the common law breach-of-contract damages they might receive from their supplier). Stein asks the Court to resolve two legal questions: (1) whether the Act authorizes suppliers to terminate distributors' contracts without cause and (2) whether RCW 19.126.040(4) provides Stein's sole remedy for relief.[2]

---

[2] Stein also asks the Court to consider whether the Act requires a terminated distributor to arbitrate its claims against its former supplier under RCW 19.126.040(7). Pabst agrees the Act only requires terminated distributors and successor distributors to arbitrate the fair market value of the affected distribution rights if they cannot agree on a value; it does not require suppliers and terminated distributors to arbitrate their grievances. *See* Dkt. #16 (Pabst's Response to Stein's Motion for Summary Judgment) at 5 n. 4; *see also* RCW 19.126.040(7). Accordingly, the Court GRANTS Stein's motion for summary judgment on this point.

## DISCUSSION

A. **Standards of Review.**

### 1. Dismissal under Rule 12(b)(6).

First, Pabst asks the Court to dismiss Stein's complaint because, it argues, Stein cannot sustain a claim against Pabst, only against Columbia. Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief plausible on its face. *See Aschcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the Court may deny leave to amend. *See Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

### 2. Summary Judgment.

Second, Stein asks the Court to grant it partial summary judgment, declaring Pabst's interpretation of the Act incorrect, because RCW 19.126.040(4) does not eliminate Stein's opportunities for relief under the common law. Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome are irrelevant to the consideration of a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### B. Termination of a Distribution Contract.

Stein asks the Court to determine whether the Act authorizes suppliers to terminate distributorships without cause. It argues the Act does not expressly or implicitly authorize termination without cause, and Washington courts have agreed. Pabst argues it could properly terminate Stein's contract without cause because the Act contemplates such terminations, and their agreement allowed either party to cancel it at will after "a reasonable time."

The Act "governs the relationship between suppliers of malt beverages and spirits and their wholesale distributors to the full extent consistent with the Constitution and laws of [Washington] and of the United States." RCW 19.126.010(2). It directs a supplier to give a distributor at least sixty days written notice and an opportunity to cure before terminating their agreement, unless (1) the distributor acts fraudulently, (2) there's "insolvency, the occurrence of an assignment for the benefit of creditors, bankruptcy, or suspension in excess of fourteen days or revocation of a license issued by the state liquor board," or (3) the supplier acquires a new brand and has another distributor handle it. RCW 19.126.040(2) (incorporating RCW 19.126.030(5)):

> A supplier must give the wholesale distributor at least sixty days prior written notice of the supplier's intent to cancel or otherwise terminate the agreement, unless such termination is based on a reason set forth in RCW 19.126.030(5) or results from a supplier acquiring the right to manufacture or distribute a particular brand and electing to have that brand handled by a different distributor. The notice must state all the reasons for the intended termination or cancellation. Upon receipt of notice, the wholesale distributor has sixty days in which to rectify any claimed deficiency. If the deficiency is rectified within this sixty-day period, the proposed termination or cancellation is null and void and without legal effect.

RCW 19.126.040(2). RCW 19.126.030(5) says:

> The supplier may cancel or otherwise terminate any agreement with a wholesale distributor immediately and without notice if the reason for such termination is fraudulent conduct in any of the wholesale distributor's dealings with the supplier or its products, insolvency, the occurrence of an assignment for the benefit of creditors, bankruptcy, or suspension in excess of fourteen days or revocation of a license issued by the state liquor board.

RCW 19.126.030(5).

Notably, RCW 19.126.040(2) does include without cause terminations in the situations it exempts from the Act's notice and opportunity-to-cure requirements, even though the Legislature

fully knew that suppliers sometimes terminate a distributor's rights without cause, and in fact used this language only two paragraphs later. *See* RCW 19.126.040(4) ("If an agreement of distributorship is terminated, canceled, *or not renewed for any reason other than for cause*, ... the wholesale distributor is entitled to compensation from the successor distributor for the laid-in cost of inventory and for the fair market value of the terminated distribution rights.") (emphasis added).

Pabst incorrectly asserts that the Act's acknowledgment of without-cause terminations in RCW 19.126.040(4) is synonymous with its authorization of them. It is not. Had the Legislature intended to permit suppliers to cancel a distributor's rights without cause, it would not have mandated that in most circumstances, a distributor must have an opportunity to cure the cause leading to its potential termination. The absence of "any reason other than for cause" from RCW 19.126.040(2)'s list of exemptions from the Act's notice and opportunity-to-cure requirements similarly evidences the Legislature's intent that a distributor's rights not be terminated without cause.

Had the Legislature intended to permit suppliers to cancel distributorships without cause, it also could have borrowed language from Colorado's beer distributor statute: "The supplier shall have the right to terminate an agreement with a wholesaler *at any time* by giving the wholesaler at least ninety days' written notice...." Colo. Rev. Stat. Ann. § 12-47-406.3(3) (emphasis added). Because Washington's Wholesale Distributors and Suppliers Act does not include such or similar language, it does not grant suppliers permission to terminate a distributor's rights without cause.

Pabst next argues its contract with Stein allows for either party to terminate their agreement at will under *Birkenwald Distributing Co. v. Heublein, Inc.*, 55 Wash. App. 1, 776

P.2d 721 (1989) and *Cascade Auto Glass, Inc. v. Progressive Casualty Insurance Co.*, 135 Wash. App. 760, 145 P.3d 1253 (2006). *Birkenwald* involves a contract that allowed a supplier to terminate its agreement with a distributor at will. *See* 55 Wash. App. at 6. The court upheld the contract because the parties had entered into it before the Wholesale Distributor and Supplier Act was established. *See id.* at 10. *Cascade* involved a terminable-at-will insurance agreement. *See* 135 Wash. App. at 765. The court upheld the contract's cancellation because the terminating party had provided reasonable notice to the other. *See id.* at 767, 771. Pabst, however, points to no language in its contract with Stein suggesting it is a terminable-at-will contract to which *Birkenwald's* and *Cascade's* reasoning applies.

The parties' contract explicitly sets forth when Pabst may cancel it. It allows Pabst to terminate with sixty-days written notice if Stein submits an inaccurate application; commits fraud; attempts an unauthorized change in control or ownership; has its license or permits suspended or revoked; sells altered products; commits appointment, assignment, or amendment violations; fails to comply with an audit; receives a felony conviction; or becomes insolvent. *See* Dkt. #12-1 (Contract) at 12–13. It also permits Pabst to terminate if after notice and a sixty-day opportunity to cure, Stein continues to violate their agreement. *See id.* at 13. The contract does not permit Pabst to cancel it "at any time" after sixty days written notice, as it does for Stein. *See id.* at 12. The contract therefore does not allow Pabst to terminate Stein's distribution rights without cause.

Moreover, *Birkenwald* undercuts Pabst's interpretation of the Act. The court, and the parties, recognized that the 1984 Wholesale Distributors and Suppliers Act did not include a right for suppliers to terminate distribution contracts at will. *See* 55 Wash. App. at 4–5. The court understood that the Wholesale Distributors and Suppliers "Act grants several protections to

wholesale distributors of wine and malt liquor, including a right of at least sixty days prior written notice of the supplier's intent to cancel a distribution agreement" that outlines the reasons for the intended cancellation and a right to rectify the claimed deficiency within sixty days. *See id.* at 4 (referencing RCW 19.126.040(2) and .040(4)) (1984). The same protections apply to distributors today. *See* RCW 19.126.040(2).

C.     **Exclusivity of RCW 19.126.040(4).**

Pabst next argues the Act governs the entire relationship between a distributor and its supplier, and when a supplier terminates a distribution contract, the successor distributor makes the terminated distributor whole by purchasing its existing inventory and paying it the fair market value of the distribution rights it formally held. Pabst asks the Court to dismiss the case because Stein's only recourse is to seek payment from Columbia in arbitration. Stein argues the Act creates an additional remedy for terminated distributors; it does not, nor was it intended to, eviscerate their rights under the common law and to immunize suppliers from liability when they cancel an agreement without cause.

The Act provides that if a supplier terminates a distributorship without cause and contracts with a new distributor, the successor distributor must purchase the terminated distributor's existing inventory and compensate it for the fair market value of its lost distribution rights:

> If an agreement of distributorship is terminated, canceled, or not renewed for any reason other than for cause, failure to live up to the terms and conditions of the agreement, or a reason set forth in RCW 19.126.030(5), the wholesale distributor is entitled to compensation from the successor distributor for the laid-in cost of inventory and for the fair market value of the terminated distribution rights.

RCW 19.126.040(4).

The Act also prevents a terminated distributor from receiving a windfall, and the fair market value of distribution rights from being falsely inflated, by discounting the amount a successor owes (for the rights) by any amount already paid. The Act does not force a supplier or third party to make this prior payment; it merely recognizes the possibility that a supplier might:

> (5) When a terminated distributor is entitled to compensation under subsection (4) of this section, a successor distributor must compensate the terminated distributor for the fair market value of the terminated distributor's rights to distribute the brand, less any amount paid to the terminated distributor by a supplier or other person with respect to the terminated distribution rights for the brand.... A terminated distributor may not receive total compensation under this subsection that exceeds the fair market value of the terminated distributor's distribution rights with respect to the affected brand. Nothing in this section may be construed to require any supplier or other third person to make any payment to a terminated distributor.

RCW 19.126.040(5).

Pabst argues *Potter v. Washington State Patrol*, 165 Wash.2d 67, 196 P.3d 691 (2008), provides the framework for analyzing whether the Act abrogates its contractual rights under the common law and makes compensation from Columbia its sole opportunity for relief. Stein disagrees *Potter* controls. It argues the Act does not strip Stein of its common law rights because it is incorporated into their agreement, and it only limits Stein's right to seek compensation for its without-cause termination but not for other grievances.

*Potter* involved a vehicle owner whose car Washington State Patrol ordered impounded after he was cited for driving with a suspended license. *See* 165 Wash.2d 67, 72, 196 P.3d 691 (2008). Potter sued claiming conversion, and the WSP moved to dismiss his claim as barred by the statute governing redemption of impounded vehicles. *See id.* at 75. The Court considered whether the statute "strip[ped] Potter of his ability to bring a conversion claim" by setting forth an exclusive remedy for relief.

This Court applied *Potter* when considering *Continental Cars, Inc. v. Mazda Motor of America, Inc.*, No. C11-5266BHS, 2011 WL 4026793, at *2 (W.D. Wash. Sept. 9, 2011), which considered whether a statute provided the exclusive remedy for challenging car dealership terminations, or whether a terminated dealer could bring a breach of contract claim too. It recognized that *Potter* sets "out the manner by which a court determines whether a statutory scheme provides the exclusive remedy for an aggrieved party to seek relief for harms alleged"—exactly what is at issue here. *Cont'l Cars, Inc. v. Mazda Motor of Am., Inc.*, No. C11-5266BHS, 2011 WL 4026793, at *2 (W.D. Wash. Sept. 9, 2011).

As in *Potter* and *Continenental*, Pabst asks the Court to dismiss Stein's common law claims, arguing Stein's sole recourse is against Columbia. It is of no moment that the Act might "only" limit Stein's contractual right to relief to issues surrounding its termination. That Pabst argues the Act forecloses Stein's avenues of relief for its termination in any way—the harm allegedly suffered here—supports the Court's need to undergo an exclusivity analysis under *Potter*.

*Potter* explains courts hesitate to recognize an abrogation of, or derogation from, the common law absent an explicit statement or clear evidence that the legislature intended to make a statutory remedy exclusive. *Id.* at 76–77; *see also Norfolk Redevelopment & Hous. Auth. V. Chesapeake & Potomac Tel. Co. of Va.*, 464 U.S. 30, 35–36, 104 S. Ct. 304, 78 L.Ed.2d 29 (1983) ("It is a well-established principle of statutory construction that the common law ought not to be deemed repealed, unless the language of a statute [is] clear and explicit for [that] purpose.") (internal punctuation omitted). A statute abrogates the common law when its provisions are "so inconsistent with and repugnant to the prior common law that both cannot

simultaneously be in force." *Id. at* 77 (citing *State ex rel. Madden v. Pub. Util. Dist. No. 1*, 83 Wash.2d 219, 222, 517 P.2d 585 (1973)).

To determine whether a statutory remedy is exclusive, a court examines the statute's language, and if that is inconclusive, it turns to "other manifestations of legislative intent." *See id.* at 79 (citing *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wash.2d 46, 54, 821 P.2d 18 (1991)). A court first searches for an exclusivity provision. *See id.* at 80 (citing *Wilmot*, 118 Wash.2d at 62, 821 P.2d 18). If the statute does not contain one, a court will examine the statute's language and provisions to determine whether clear evidence shows the legislature intended the statutory remedy to supplant the common law remedy, even though it did not explicitly say so. *See id.* at 81 (citing *Wilmot*, 118 Wash.2d at 54, 821 P.2d 18). For example, a court will consider whether the statutory remedy and the common law remedy can operate in tandem. *See id.* at 82. "In the absence of statutory language or provisions clearly establishing the exclusivity of a remedy," a court looks at other manifestations of the legislature's intent: It will consider the adequacy or comprehensiveness of the statutory remedy, the statute's purpose, and whether the common law remedy predates the statutory remedy. *See id.* at 84 (citing *Wilmot*, 118 Wash.2d at 61–65, 821 P.2d 18).

### 1. Legislative Intent Evidenced by the Act's Language.

A court first examines a statute's language for clear evidence that the legislature intended the statute's remedy to abrogate the common law. *See id.* at 81–82. Stein argues the Wholesale Distributors and Suppliers Act's statutory language and provisions do not limit its damages to the purchase of its inventory and the fair market value of its lost distribution rights. Rather, it expands the relief available to it.

Pabst argues the Act contains a statement of exclusivity because (1) if a distributor agreement is not renewed for any reason other than one for cause, RCW 19.126.0404(4) limits the terminated distributor to recovering the fair market value of its formerly-held rights from the successor distributor, and (2) RCW 19.126.040(5) prohibits a terminated distributor from recovering damages from a supplier or a third party.

Pabst's selective and convoluted reading of these provisions does not convert them into an exclusivity statement. First, whether taken separately or together, these provisions do not say what Pabst says they do. RCW 19.126.040(4) acknowledges that terminations without case happen, and when they do, it mandates that the successor distributor purchase the terminated distributors' inventory and compensate it for its lost distribution rights. RCW 19.126.040(5) explains, though, that a successor distributor may deduct from the amount it owes any payments already made by another party. This provision prevents the terminated distributor from receiving a windfall, prevents the fair market value calculation from being falsely inflated, and allows suppliers and successor distributors to negotiate between themselves who will compensate the terminated distributor for its lost distribution rights, and if they decide both will, allows them to determine how much each will contribute.

Second, exclusivity statements are more explicit than Pabst's rendering. For example, the statute governing health care peer reviews in Washington says, "[T]his section shall provide the *exclusive remedies* in any lawsuit by a health care provider for any action taken by a professional peer review body of health care providers...." RCW 7.71.030 (2013) (emphasis added). And the Industrial Insurance Act "*abolished*" all civil actions, creating a new statutory remedy "to the *exclusion* of every other remedy, proceeding or compensation," when it announced that the common law system governing workers' compensation contradicts modern industrial conditions.

RCW 51. 04.010 (2017) (emphasis added). Similarly, Colorado's and Kentucky's beer distributor statute's declare arbitration to be the sole remedy for relief available to a terminated distributor disputing the fair market value of its lost rights (when a supplier transfers its business to a successor supplier, and the successor supplier hires a successor distributor). *See* Colo. Rev. Stat. Ann. § 12-47-406.3(4)(c)(V) ("Any arbitration held pursuant to this paragraph (c) shall be *in lieu of all other remedies and procedures.*") (emphasis added); *see also* Ky. Rec. Stat. Ann. § 244.606(2)(h) ("Any arbitration held pursuant to this subsection shall be *instead of all other remedies and procedures.*") (emphasis added).

Tellingly, Washington's Wholesale Distributors and Suppliers Act does not contain such language. Had the Legislature wanted to declare compensation from successor distributors the "exclusive remedy" available to terminated distributors, it could have said so, "abolishing" common law rights under distribution contracts. It could have borrowed Colorado's and Kentucky's language. But, it did not.

Pabst also argues that when the Legislature amended the 2009 version of the Act to clarify that successor distributors shall compensate terminated distributors, it clearly intended that terminated distributors could not also receive compensation from their former suppliers. The Court disagrees.

The Act, as amended, does not mandate that successor distributors alone must compensate terminated distributors. Rather, it allows successor distributors and suppliers to negotiate with one another about who will pay the terminated distributor, and if each does, by how much. RCW 19.126.040(5) says that if a supplier or a third party has already compensated a terminated distributor, the successor distributor need not pay that amount.

Also, the Act's remedy and a common law remedy for a breach of contract can coexist. The Act controls how a terminated distributor's inventory is treated and ensures that the distributor receives compensation for its lost distribution rights. The Act does not affect how a distributor is compensated for its lost profits, reputational damages, or reliance damages, if owed. Nor does it address how a terminated distributor is compensated when its former supplier does not hire a successor distributor. Under Pabst's interpretation, a supplier could terminate a distributor's contract without cause and could take its operations in-house without owing the terminated distributor any compensation. The statute's provisions do not evidence a clear intent to effectuate such an imbalance between suppliers and distributers.

## 2. Other Manifestations of Legislative Intent.

If the statutory language does not evidence an intent by the legislature to establish an exclusive remedy, a court turns to other manifestations of intent. It considers the adequacy or comprehensiveness of the statutory remedy, the statute's purpose, and the statute's origin.

Stein argues none of these considerations evidences the Legislature intended RCW 19.126.040 to offer a terminated distributor's exclusive remedy for relief. It argues the Act is far from comprehensive because it only addresses part of the loss wrongful termination causes; enhances, not limits, the contractual rights and responsibilities between suppliers and distributors; and postdates one's right to bring contractual claims under the common law. Pabst identifies no manifestation of an intent by the Legislature to make the Wholesale Supplier and Distributor's remedy exclusive.

The Court agrees with Stein that the Act is far from comprehensive. It does not address how a supplier—the party who actually contracted with the terminated distributor—compensates a distributor whose contract it terminates without cause. It offers no compensation for the

damages that can stem from a terminated distributorship besides the fair market value of the lost distribution rights. For example, it neglects lost profits or reliance damages. It also fails to address how a terminated distributor is compensated for its inventory and lost distribution rights when a supplier refuses to contract with a successor distributor. Pabst has not shown that the Legislature intended to insulate from any liability a supplier that terminates a contract without cause, allowing it to get off scot-free in this circumstance. The Act's limited scope demonstrates it created a cumulative remedy for distributors terminated without cause.

The Act's purpose and date of origin also do not evidence an intent to make RCW 19.126.040 the exclusive remedy available to terminated distributors. The Act encourages suppliers and distributors to serve the public "through the fair, efficient, and competitive distribution of" spirits and malt beverages. RCW 19.126.010. It does not aim to immunize suppliers from liability from wrongdoing or to pass off their liabilities to third parties.

It was created in 1984, after the common law right to bring a claim for a breach of contract. Where the statutory remedy postdates the common law remedy, a court infers the statutory remedy is cumulative, not exclusive. *See Potter*, 165 Wash.2d at 88. For this reason too, RCW 19.126.040 is supplemental to the common law; it does not supplant it.

## CONCLUSION

The Wholesale Supplier and Distributor Act does not immunize from liability suppliers who terminate distribution contracts without cause. Under the Act, a distributor terminated without cause receives compensation for its existing inventory and for the fair market value of its lost distributor rights. It receives this compensation from the successor distributor, or from the supplier or a third party if the supplier or third party so elects. A terminated distributor can also pursue damages against the supplier if the supplier breached their contract. For these reasons, (1)

the Act does not authorize suppliers to terminate distributorships without cause, and (2) it does not command the exclusive remedy available to terminated distributors. Stein has therefore asserted a plausible claim for relief against Pabst, which it may pursue. Accordingly, Pabst's Motion for Dismissal [Dkt. #11] is DENIED, and Stein's Motion for Partial Summary Judgment [Dkt. #14] is GRANTED.

IT IS SO ORDERED.

Dated this 26th day of May, 2017.

Ronald B. Leighton
United States District Judge